1   CARLA B. OAKLEY, Cal. State Bar No. 130092
    AHREN C. HOFFMAN, Cal. State Bar No. 250469
2   LEIGHA E. WILBUR, Cal. State Bar No. 251795
    MORGAN, LEWIS & BOCKIUS LLP
3   One Market, Spear Street Tower
    San Francisco, CA  94105-1126
4   Tel:  415.442.1000
    Fax: 415.442.1001
5   E-mail:      coakley@morganlewis.com
                 ahoffman@morganlewis.com
6                lwilbur@morganlewis.com

7   Attorneys for Plaintiff
    Mortgage Electronic Registration Systems, Inc.

8

9

10

11                  UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14   MORTGAGE ELECTRONIC                    Case No. 09    3600
     REGISTRATION SYSTEMS, INC., a
15   Delaware corporation,                  MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
16                        Plaintiff,        PLAINTIFF'S *EX PARTE* MOTION FOR
                                            TEMPORARY RESTRAINING ORDER
17           vs.                            AND ORDER TO SHOW CAUSE

18   JOHN BROSNAN, MORTGAGE
     ELECTRONIC REGISTRATION
19   SYSTEMS, INC., a California corporation,
     and ROBERT JACOBSEN,
20
                          Defendants.
21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 1

    A.      MERS OWNS EXCLUSIVE RIGHTS IN "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS" AND "MERS" ...................................................... 1

    B.      MERS HAS EXTENSIVELY PROMOTED ITS SERVICES USING "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS" AND "MERS" AS WELL AS THE "MERSINC.ORG" DOMAIN NAME .................. 3

    C.      DEFENDANTS ADOPTED IDENTICAL NAMES, CREATING CONFUSION, TRADING ON MERS' GOODWILL AND  INTENDING TO EXTRACT FEES FROM MERS ...................................................... 4

III.    ARGUMENT ........................................................................................................ 6

    A.      Legal Standard For TRO ............................................................................. 6

    B.      MERS Will Prevail On Its Trademark And Trade Name Claims ........................... 7

        1.      After More Than A Decade Of Exclusive Use For Services Involving Millions Of Loans, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS And MERS Are Strong And Well Known Nationwide ................................................................................ 8

        2.      Defendants Are Using The Identical Name ................................................. 9

        3.      Defendants' Bad Faith Intent Favors MERS ............................................ 10

        4.      Defendants' Services, If Offered, Are Related And Complementary To The Services MERS Offers And Would Be Promoted In Overlapping Channels Of Trade To Overlapping Consumers .................. 12

        5.      Actual Confusion Favors MERS .............................................................. 12

    C.      MERS Is Likely To Prevail On Its Unfair Business Practices Claims ................. 14

        1.      Defendants' Business Practices Are Unfair And Fraudulent .................... 14

        2.      Defendants' Business Practices Are Unlawful ........................................ 15

    D.      MERS Is Likely To Prevail On Its Conversion And Trespass To Property Claims ......................................................................................................... 16

        1.      MERS  Owns Or Has The Right To Possess The Legal Documents In Defendants' Possession ....................................................................... 17

        2.      Defendants' Disposition Of MERS' Property Is Inconsistent With MERS' Property Rights .......................................................................... 17

        3.      MERS Has Been And Will Be Foreseeably Damaged By Defendants' Conversion Of Its Property ................................................. 17

    E.      MERS Will Suffer Irreparable Harm If An Immediate TRO Is Not Granted ....... 18

    F.      The Balance Of Hardships Strongly Favors MERS ........................................... 19

    G.      The Courts Grant Of A TRO Serves The Public Interest ..................................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

i

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3    IV.    UNDER THE UNIQUE FACTS HERE, IT IS WELL WITHIN  THE COURT'S
          DISCRETION TO DECLINE TO REQUIRE  A BOND, OR TO REQUIRE A
4         NOMINAL BOND ............................................................................................... 21

5    V.     CONCLUSION ................................................................................................... 22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1

# TABLE OF AUTHORITIES

2

**Page**

3

<u>**Cases**</u>

4

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1997)..................................................................... 7, 12, 13

5

*Banff, Ltd. v. Federated Dept. Stores, Inc.,*
   841 F.2d 486 (2d Cir. 1988)................................................................................. 13

6

7

*Beer Nuts, Inc. v. Clover Club Foods Co.,*
   805 F.2d 920 (10th Cir. 1986).............................................................................. 10

8

*Brookfield Comms., Inc. v. W. Coast Entm't Co.,*
   174 F.3d 1036 (9th Cir. 1999).......................................................................... 7, 10

9

10

*Cal. Indep. Sys. Operator Co. v. Reliant Energy Servs.,*
   181 F. Supp. 2d 1111 (E.D. Cal. 2001).................................................................. 6

11

*Caribbean Marine Servs. Co. v. Baldridge,*
   844 F.2d 668 (9th Cir. 1988)................................................................................. 6

12

13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
   973 P.2d 527 (Cal. 1999) ..................................................................................... 15

14

*Century 21 Real Estate Corp. v. Sandlin,*
   846 F.2d 1175 (9th Cir. 1988)............................................................................... 9

15

16

*Community Assisting Recovery, Inc. v. Aegis Ins. Co.,*
   92 Cal.App. 4th 886 (2001) ................................................................................. 14

17

*Duncan McIntosh Co., Inc. v. Newport Dunes Marina LLC,*
   324 F. Supp. 2d 1078 (C.D. Cal. 2004)................................................................ 13

18

19

*Electropix v. Liberty Livewire Co.,*
   178 F. Supp. 2d 1125 (C.D. Cal. 2001) ............................................................... 13

20

*Emery v. Visa Internet Service Ass'n,*
   95 Cal. App. 4th 952 (2002) ................................................................................. 14

21

22

*Enterprise Leasing Co. v. Shugart Co.,*
   231 Cal.App. 3d 737 (1991).................................................................................. 17

23

*Farmers Ins. Exch. v. Sup. Ct.,*
   826 P.2d 730 (Cal. 1992) ................................................................................ 15, 17

24

25

*Farmers Insurance Exchange v. Zerin,*
   53 Cal.App. 4th 445 (1997) .......................................................................... 15, 16, 17

26

*Fremont Indem. Co. v. Fremont General Co.,*
   148 Cal.App. 4th 97 (2007) .................................................................................. 16

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

iii

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Golden Door, Inc. v. Odisho*,
          646 F.2d 347 (9th Cir. 1980)...................................................................................... 7
4
     *GoTo.com , Inc. v. Walt Disney Co.*,
5         202 F.3d 1199 (9th Cir. 2000)..................................................................... 7, 9, 18, 21

6    *Henderson v. Security National Bank*,
          72 Cal.App.3d 764 (1977) ........................................................................................ 16
7
     *Hewlett-Packard Co. v. Packard Press, Inc.*,
8         281 F.3d 1261 (Fed. Cir. 2002) ................................................................................ 10

9    *Intel Co. v. Hamidi*,
          71 P.3d 296 (Cal. 2003) ........................................................................................... 16
10
     *Jim Dandy Co. v. Martha White Foods, Inc.*,
11        458 F.2d 1397 (C.C.P.A. 1972) ................................................................................. 8

12   *Jockey Int'l., Inc. v. Burkard*,
          85 U.S.P.Q. 201 (S.D. Cal. 1975) ............................................................................ 10
13
     *Jorgensen v. Cassiday*,
14        320 F.3d 906 (9th Cir. 2003) .................................................................................... 21

15   *Kasky v. Nike, Inc.*,
          45 P.3d 243 (Cal. 2002) ........................................................................................... 15
16
     *Klein v. Earth Elements, Inc.*,
17        59 Cal. App. 4th 965 (1997) ..................................................................................... 14

18   *Kohler Co. v. Baldwin Hardware Co.*,
          82 U.S.P.Q.2d 1100 (T.T.A.B. 2007) ........................................................................ 9
19
     *KOS Pharm., Inc. v. Andrx Corp.*,
20        369 F.3d 700 (3d Cir. 2004) ..................................................................................... 19

21   *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
          408 F.3d 596 (9th Cir. 2005).................................................................................... 8
22
     *Krusi v. Bear, Stearns & Co.*,
23        144 Cal. App. 3d 664 (1983) .................................................................................... 16

24   *K-Swiss, Inc. v. USA AISIQI Shoes, Inc.*,
          291 F. Supp. 2d 1116 (C.D. Cal. 2003) ................................................................... 18
25
     *Lomboy v. SCME Mortgage Bankers*,
26        2009 U.S. Dist. LEXIS 44158 (N.D. Cal. 2009)...................................................... 2

27   *Matek v. Murat*,
          862 F.2d 720 (7th Cir. 1987)..................................................................................... 21

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

iv

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

**TABLE OF AUTHORITIES**
(continued)

Page

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ............................................. 14

*Moore v. Regents of Univ. of Calif.*,
    793 P.2d 479 (Cal. 1990) ................................................... 16

*Nat'l Bank of New Zealand v. Finn*,
    253 P. 757 (Cal. 1927) ...................................................... 17

*Ocean Garden, Inc. v. Marktrade Co.*, Inc.,
    953 F.2d 500 (9th Cir. 1991) ............................................... 9

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ............................................... 10

*Palantir Technologies Inc. v. Palantir.net, Inc.*,
    2008 WL 152339 (N.D. Cal. 2008) ......................................... 12

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985) .......................................................... 8

*Phillip Morris USA Inc. v. Shalabi*,
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) ................................... 20

*Rothschild v. Tyco Intl. Inc.*,
    83 Cal.App. 4th 488 (2000) ................................................ 14

*Russell v. Caesar*,
    62 U.S.P.Q.2d 1125 (N.D. Cal. 2001) ...................................... 9

*Schnall v. Hertz Co.*,
    78 Cal. App. 4th 1144 (2000) .............................................. 14

*Schroeder v. Auto Driveaway Co.*,
    523 P.2d 662 (Cal. 1974) ................................................... 17

*Steinway & Sons v. Robert Demars & Friends*,
    210 U.S.P.Q. 954 (C.D. Cal. 1981) .......................................... 7

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ............................................... 6

*SuccessFactors, Inc. v. Softscape, Inc.*,
    44 F. Supp. 2d 975 (N.D. Cal. 2008) ....................................... 6

*Sunbeam Furniture Co. v. Sunbeam Co.*,
    191 F.2d 141 (9th Cir. 1951) .............................................. 12

*Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) ....................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

v

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

**TABLE OF AUTHORITIES**
(continued)

Page

*Thane Intern., Inc. v. Trek Bicycle Co.*,
    305 F.3d 894 (9th Cir. 2002)..................................................................................... 13

*Thrifty-Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1559 (1996) ..................................................................................... 16

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)...................................................................................................... 7

*Ultrapure Systems, Inc. v. Ham-Let Group*,
    921 F.Supp. 659 (N.D. Cal. 1996) .............................................................................. 8

*Weldon Farm Products, Inc. v. Packaging Enterprises, Inc.*,
    197 U.S.P.Q. 584 (T.T.A.B. 1977) ............................................................................. 8

*Zaslow v. Kroenert*,
    176 P.2d 1 (Cal. 1946) ............................................................................................... 16

**Statutes**

15 U.S.C. § 1115(b) .......................................................................................................... 8

15 U.S.C. § 1127 ............................................................................................................... 7

Ariz. Bus. Corp. Act. § 10-1501B .................................................................................... 2

Cal. Bus. & Prof. Code § 14417 ....................................................................................... 9

Cal. Bus. & Prof. Code § 17200 ........................................................................... 6, 14, 15

Cal. Civ. Proc. Code § 1209............................................................................................ 15

Cal. Civ. Proc. Code § 1209(a)(8)................................................................................... 15

Cal. Corp. Code § 167..................................................................................................... 2

Cal. Corp. Code § 171..................................................................................................... 2

Cal. Corp. Code § 191..................................................................................................... 2

Cal. Corp. Code § 2105(a) .............................................................................................. 2

Cal. Crim. Code § 518 .................................................................................................... 15

Cal. Crim. Code § 523 .................................................................................................... 15

Cal. Crim. Code § 529 .................................................................................................... 16

Cal. Gov. Code § 26660.................................................................................................. 15

Or. Bus. Corp. Act § 60.701(2)........................................................................................ 2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

**TABLE OF AUTHORITIES**
(continued)

Page

Tex. Bus. Corp. Act § 8.01B ........................................................................................ 2

Wash. Bus. Corp. Act § 23B.15.010(2) ........................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 65(b) ................................................................................................... 6

Fed. R. Civ. P. 65(c) ................................................................................................... 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

## I.    INTRODUCTION

This case arises from a scheme to profit from the creation of imposter companies in California and other states.  Under this scheme, the intent is to extort fees for accepting and forwarding legal documents served on the imposter companies operating under the stolen name, and to trade on plaintiff's goodwill and unique position in the real estate financing industry.

Plaintiff is Mortgage Electronic Registration Systems, Inc. ("MERS").  Plaintiff has been using its MORTGAGE ELECTRONIC REGISTRATION SYSTEMS name and mark for well over a decade and is known throughout the mortgage industry as MERS.  MERS is the target of a scheme perpetrated by Defendants John Brosnan and Robert Jacobsen through companies that they recently established.  Defendants intentionally have selected the identical name of "Mortgage Electronic Registration Systems, Inc." for corporations in California, Washington, Oregon, Arizona and Texas, and are using the federally-registered MERS® brand as part of an email address in connection with one or more of said businesses.  All of this has been done without authorization from MERS.

In record time, Defendants already have caused actual confusion and the confusion is likely to expand if not stopped.  Exploiting the identical name, Defendants improperly have accepted service of process of hundreds of summonses and complaints intended for MERS and have demanded that MERS pay them for accepting and forwarding of these documents. Otherwise, Defendants have threatened, the documents will be thrown in the trash.

To prevent further marketplace confusion, disruption of the legal system for countless third parties and irreparable harm to its reputation, MERS hereby seeks a TRO prohibiting Defendants from using its names and marks, and from accepting any further service of process intended for MERS.  MERS also respectfully requests that the Court order Defendants to deliver immediately all documents that they have received that were intended for MERS.

## II.    FACTUAL BACKGROUND

### A.    MERS OWNS EXCLUSIVE RIGHTS IN "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS" AND "MERS"

MERS is a special purpose Delaware corporation that acts as the mortgagee or beneficiary

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

1

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

for millions of mortgages and Deeds of Trust for properties across the country.[1]  Declaration of William C. Hultman, filed herewith ("Hultman Decl."), ¶¶ 1, 3.  When named as the mortgagee or beneficiary, MERS holds legal title to the mortgage or Deed of Trust, while the beneficial ownership interests and servicing rights are bought and sold.  *Id.* ¶ 3.  The parent company of MERS, MERSCORP, Inc., operates a database that tracks when the mortgage servicing rights and beneficial ownership interests are bought and sold between MERS members, which include some of the nation's largest mortgage companies and banks.  *Id.*  With this nationwide system in place, MERS and MERSCORP eliminate the need for mortgage lien assignments when servicing rights and beneficial note ownership rights are bought and sold because the mortgage lien remains with MERS as the mortgagee or beneficiary, and MERS holds legal title to the security instrument as an agent of the originating lender and the lender's successors and assigns.  *Id.*  This reduces cost and increases efficiency for the entire mortgage industry and consumers.  *Id.*

For the last thirteen years, MERS has held legal title to mortgages and Deeds of Trust on behalf of its members across the country, providing these services under the MORTGAGE ELECTRONIC REGISTRATION SYSTEMS name and mark, as well as the MERS name and mark.  Hultman Decl. ¶ 4.  MERS is a federally registered service mark owned by MERSCORP and exclusively licensed to MERS for use as a name and mark in connection with the unique service it provides.  *Id.*  The federal registration for the MERS mark issued on July 29, 1997, and is incontestible.  *Id.* Exh. A.

MERS, as original mortgagee or beneficiary, is approved by, among others, the California Housing Finance Agency and various Wall Street rating agencies.  *Id.* ¶ 5.  Fannie Mae and

---

[1] As a Delaware corporation, MERS is a foreign corporation in California.  Cal. Corp. Code §§ 167, 171.  MERS is not required to register with the California Secretary of State given the nature of the services it provides.  *See Lomboy v. SCME Mortgage Bankers*, 2009 U.S. Dist. LEXIS 44158 (N.D. Cal. 2009); Cal. Corp. Code §§ 191(a) , 2105(a); *see also* Cal. Corp. Code § 191(c) (identifying activities that do not constitute transacting intrastate business in California, including creating evidences of debt or mortgages, liens or security interests on real or personal property, and maintaining or defending legal actions in California); Cal. Corp. Code § 191(d)(3) ("enforcement of any loans by trustee's sale, judicial process or deed in lieu of foreclosure or otherwise," does not constitute transacting intrastate business in California).  The law is the same in Arizona (*see* Ariz. Bus. Corp. Act §§ 10-1501B(1), (7) and (8)), Oregon (*see* Or. Bus. Corp. Act §§ 60.701(2)(a),(g) and (h)), Texas (*see* Tex. Bus. Corp. Act§§ 8.01B(1), (7), (8) and (12)) and Washington (*see* Wash. Bus. Corp. Act §§ 23B.15.010(2)(a), (g) and (h)).

1  Freddie Mac have authorized language for incorporation in security instruments that expressly

2  approves the appointment of "Mortgage Electronic Registration Systems, Inc." to be the

3  beneficiary or mortgagee of record on security instruments used by MERS members.  *Id.*  As a

4  result, the name "Mortgage Electronic Registration Systems, Inc.," in reference solely to Plaintiff

5  due to its unique role in the mortgage industry as the beneficiary or mortgagee of record for

6  MERS members, is in mortgages and Deeds of Trust recorded in every state in the country,

7  including in California, Washington, Oregon, Texas and Arizona.  *Id.*; *see also* Hultman Decl.,

8  Exh. D (samples of documents referencing Plaintiff MERS).

9  MERS has 4,593 member lenders and servicers, including 1,934 members that have

10  registered loans in the MERS database for properties in California.  *Id.* ¶ 6.  MERS is expressly

11  named in and serves as the mortgagee or beneficiary for more than 60 million mortgages or

12  Deeds of Trust for properties throughout the United States, more than 9.7 million of which are

13  located in California.  *Id.* ¶ 7.  Millions more are located in Washington, Oregon, Texas and

14  Arizona.  *Id.*  As a result, and given the number of years it has been in business, MERS and the

15  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS name is well known.  *Id.*

16  In its role as mortgagee or beneficiary, MERS must be named in any lawsuit or legal

17  paper (such as a Notice of Default or Notice of Trustee's Sale), which purports to affect the

18  mortgage lien which MERS is holding.  MERS receives service of process frequently with respect

19  to properties across the country.  For 2009 alone, MERS has been named as a defendant in at least

20  2,500 lawsuits involving properties in California, Arizona, Texas, Oregon and Washington.

21  MERS has also received hundreds of thousands of other legal notices for properties in these

22  states.  Declaration of Joseph Patry, filed herewith ("Patry Decl."), ¶ 11.

23  **B.     MERS HAS EXTENSIVELY PROMOTED ITS SERVICES USING
         "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS" AND
24       "MERS" AS WELL AS THE "MERSINC.ORG" DOMAIN NAME**

25  Since its inception more than a decade ago, MERS extensively has promoted and sold its

26  services using both MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS

27  throughout the United States, including in California.  *See* Hultman Decl. ¶¶ 8-16, Exhs. B-D.

28  The company's marketing program for members of the mortgage industry (including lenders,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

servicers, investors and vendors) consists of a mix of local and national event sponsorships, outreach to the trade media, distribution of informational and sales materials, training events, and direct communications (such as email newsletters and in-person sales calls). *Id*. ¶¶ 10-13. Since its inception, MERS has placed advertisements in industry publications and held annual MERS User Conferences, and also attended myriad conferences to promote its services. *Id*.

For the general public (e.g., federal and state legislators, city administrators, homeowners), MERS services are marketed at targeted events (*e.g.*, HopeNow), and it also offers training workshops, places articles in the mainstream media, and has a series of print and online materials for educational and promotional purposes. *Id*. ¶¶ 14, 15, Exh. B.

MERS services as a mortgagee or Deed of Trust beneficiary are also promoted on the Internet at "mersinc.org," using both MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS. *Id*. ¶¶ 8, 14, Exh. B. MERS has operated this web site with MERSCORP since 2002. *Id*. From March 2009 to July 2009 alone, the website had 23,724,976 hits. *Id*. ¶ 8, Exh. B. The mersinc.org web site contains a comprehensive overview of MERS, with myriad references to "Mortgage Electronic Registrations Systems," and houses a vast assortment of training materials both on the technical side and the business side. *Id*. ¶ 14.

## C. DEFENDANTS ADOPTED IDENTICAL NAMES, CREATING CONFUSION, TRADING ON MERS' GOODWILL AND INTENDING TO EXTRACT FEES FROM MERS

Defendant John Brosnan is well aware of MERS. He sued the company at least two times so far this year, filing in *pro per*. Declaration of Carla B. Oakley, filed herewith ("Oakley Decl."), Exhs. G, O. Defendant Robert Jacobsen, as a broker licensed by the California Department of Real Estate, also is well aware of MERS. *Id*. Exh. Q. Defendants appear to have a long history working together on various property foreclosures, investments and related dealings, and are frequent litigants and bankruptcy filers.[2] *Id*., Exhs. G-O. They now have used MERS'

---

[2] On July 1, 2009, Mr. Brosnan filed a *pro per* complaint (*Brosnan v. CountryWide Home Loans Inc.*, C.D. Cal. Case No. Cv09-4765 6AF (AGRx)), against various defendants, including MERS, asserting claims that he allegedly acquired from Mr. Jacobsen's wife, Alise Malikyar, regarding loans on three properties in Texas. Oakley Decl., Exh. O. One of the properties at issue in that action is the same address that Mr. Jacobsen used as the Registered Agent for the "Mortgage Electronic Registration Systems, Inc." entity he established in Texas. *Id*. at Exh. B. In another

1   well known name to create sham companies, interfered with legal process in hundreds of

2   lawsuits, and demanded payments from MERS.

3          Defendants so far have established at least five imposter companies, including in

4   California.  Mr. Brosnan established a California corporation on June 1, 2009, using the name

5   "Mortgage Electronic Registration Systems, Inc.," which is the corporate defendant in this action.

6   *See* Patry Decl. ¶¶ 12-4, Exh. B; Oakley Decl. Exh. A.  As soon as MERS learned of this, it

7   contacted Mr. Brosnan and demanded that he stop using its name.  Patry Decl. ¶ 3, Exh. A.

8   Mr. Brosnan has ignored the demands.  Patry Decl. ¶ 4, Exh. B; Oakley Decl. ¶ 6, Exh. E.  As

9   MERS only recently discovered, Mr. Brosnan filed to establish an Arizona corporation also using

10  the name "Mortgage Electronic Registration Systems, Inc.," and that application appears to be

11  pending.  *See* Patry Decl. ¶¶ 5-8, Exhs. C-E.

12         Mr. Brosnan has taken other steps to hijack MERS' rights and to create confusion.

13  Mr. Brosnan established an e-mail address using the MERS® mark, "mersservice@gmail.com,"

14  which is listed as the Agent for Service of Process contact information with the California

15  Secretary of State and which Mr. Brosnan uses for communications.  *See* Patry Decl. ¶¶ 2-4,

16  Exh. B; Oakley Decl., Exh. A.  Mr. Brosnan also filed to federally register MORTGAGE

17  ELECTRONIC REGISTRATION SYSTEM [sic].  Oakley Decl. Exh. F.  In this application,

18  Mr. Brosnan identified himself as the owner of the mark.[3]  *Id.*

19         MERS learned recently that Mr. Brosnan is not acting alone.  On July 21, MERS received

20  an email from Mr. Jacobsen, claiming to be the president of companies established in Texas,

21  Oregon and Washington with the name "Mortgage Electronic Registration Systems, Inc.," and

22  demanding that MERS pay for him to accept service of process on its behalf.  Patry Decl. ¶ 9,

23  Exh. F.  Secretary of State records show that these companies were established on May 29, 2009,

24

25  *pro per* complaint (*Brosnan v. Deutsche Bank National Trust Co.*, N.D. Cal. Case No. CV 08-
    4049 (MEJ)), Mr. Brosnan asserted claims arising out of a foreclosure sale and described in
26  paragraph 64 obtaining advice from "his loan broker, Robert Jacobsen."  Oakley Decl., Exh. H.

27  [3] Although Mr. Brosnan claimed in the application under penalty of perjury to have used the mark
    in commerce in connection with providing "real estate financing services" since May 26, 2009,
28  and provided what he described as "SIGNAGE" as a specimen with application, no such signage
    appears at the address of the so-called "SIGNAGE."  Oakley Decl., Exh. P.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

June 1, 2009, and June 3, 2009, respectively.  Oakley Decl., Exhs. B-D.  MERS has demanded that Mr. Jacobsen stop use of its name with these companies and stop accepting service of process on its behalf, but MERS has received no response to this demand.  Patry Decl. ¶ 10, Exh. G.

To prevent further confusion and harm, MERS was forced to file a complaint against Messrs. Brosnan and Jacobsen, and the California entity with its name, and to file this motion for expedited relief.  In its complaint, MERS asserts claims for violation of Sections 32 and 43(a) of the Lanham Act (trademark infringement and false designation of origin); violation of California's Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200; trespass and conversion; and various related state claims for relief.

## III.   ARGUMENT

### A.   Legal Standard For TRO

A temporary restraining order is appropriate where the moving party demonstrates that, absent the order, it will suffer "immediate and irreparable injury, loss, or damage."  Fed. R. Civ. P. 65(b).  The standard for issuing a temporary restraining order is the same as the standard for granting a preliminary injunction.  *See Cal. Indep. Sys. Operator Co. v. Reliant Energy Servs.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).  A party is entitled to a TRO upon showing either (1) probable success on the merits combined with the possibility of irreparable injury, or (2) that the moving party has raised serious questions going to the merits, and that the balance of hardships tips sharply in the moving party's favor.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001).  These are not separate tests but "the outer reaches of a single continuum."  *Id*.  Courts will also consider the public interest when evaluating a request for injunctive relief.  *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

MERS has shown ample evidence to establish that it will suffer immediate and irreparable injury in the absence of a TRO, and that litigants in countless other cases also will be harmed if Defendants are not stopped immediately.  Because the possibility of irreparable harm is so great, the burden on MERS to prove likelihood of success is correspondingly lower.  *See SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 979 (N.D. Cal. 2008) ("the required degree of irreparable harm increases as the probability of success decreases . . . , and vice versa.")

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                                   6                    PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1   (internal citation omitted).  Even without the lower burden, MERS is likely to succeed on the

2   merits of the causes of action in its complaint given the conduct uncovered to date.

3            **B.        MERS Will Prevail On Its Trademark And Trade Name Claims**

4            There can be no doubt that MERS will succeed on its federal and state trademark

5   infringement and false designation of origin claims given its long-established rights, Defendants'

6   intentional adoption of the identical "Mortgage Electronic Registration Systems, Inc." name and

7   the email address merservice@gmail.com, and the massive confusion that already has erupted.

8   *See Brookfield Comms., Inc. v. W. Coast Entm't Co.*, 174 F.3d 1036, 1053 (9th Cir. 1999);

9   *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 351-52 (9th Cir. 1980).

10           Congress' intent with the Lanham Act was to make "actionable the deceptive and

11  misleading use of marks."  *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 767-68 (1992)

12  (quoting 15 U.S.C. § 1127).  Likelihood of confusion stands at the core of trademark and trade

13  name infringement.  *GoTo.com , Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000).  In

14  determining likelihood of confusion, the Ninth Circuit evaluates the eight *Sleekcraft* factors:

15  (1) the strength of the mark; (2) the similarity of the marks; (3) the competitive or relatedness of

16  the goods and services; (4) the channels of trade used; (5) evidence of actual confusion; (6) the

17  types of goods and services and the degree of care likely to be exercised by the purchaser; (7) the

18  defendant's intent in selecting the mark; and (8) the likelihood of expansion of product lines.

19  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1997); *GoTo.com*, 202 F.3d at 1205.

20  Courts do not rigidly weigh these factors, and "no single factor is determinative."  *GoTo.com*, 202

21  F.3d at 1205-6; *Steinway & Sons v. Robert Demars & Friends*, 210 U.S.P.Q. 954, 965 (C.D. Cal.

22  1981).  Here, the *Sleekcraft* factors overwhelmingly weigh in favor of finding that Defendants'

23  use of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and the email address

24  merservice@gmail.com creates a likelihood of confusion in violation of Sections 32 and 43 of

25  the Lanham Act and related state causes of action.[4]

---

[4]  Section 32 of the Lanham Act (15 U.S.C. §1114) applies to registered marks and Section 43(a) (15 U.S.C. §1125(a)) applies to the unregistered marks and trade names.  The same rules of trademark and name validity and infringement apply to causes of action brought under both sections of the Act.  *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).  It is well established

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                          7                     PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
                                                            MOTION FOR TRO AND OSC

1.      **After More Than A Decade Of Exclusive Use For Services Involving Millions Of Loans, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS And MERS Are Strong And Well Known Nationwide**

MERS has used its MORTGAGE ELECTRONIC REGISTRATION SYSTEMS mark and name for thirteen years. Hultman Decl. ¶ 4. The role that MERS plays, as mortgagee or beneficiary, together with the database owned by its parent company MERSCORP, is unique in the real estate finance industry. *Id.* ¶ 6. More than 4,593 member lenders and loan servicers use MERS' services, including 1,934 members that have registered loans in the MERS database for properties in California. *Id.* MERS is the mortgagee or beneficiary in 60 million loans for properties nationwide, millions of which are in California, and its name "Mortgage Electronic Registration Systems, Inc." appears in documents for each of these loans. *Id.* ¶ 3. As a result of its longstanding, extensive and exclusive use, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS has acquired distinctiveness and has come to be associated exclusively with MERS. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596 (9th Cir. 2005); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (descriptive marks are protectible upon a showing of acquired distinctiveness).

Since its inception, MERS also has used MERS as a name and mark. Hultman Decl., ¶ 4, Exh. A. The MERS mark was federally registered in 1997, and that registration has been incontestible since 2002. 15 U.S.C. § 1065 (continuous use for five consecutive years subsequent to the registration date confers incontestable status). *Id.* This incontestible registration constitutes "*conclusive* evidence of the validity of the registered mark … and of the registrant's *exclusive* right to use the registered mark in commerce." 15 U.S.C. § 1115(b).[5]

As established in the accompanying declaration of William C. Hultman and examples of marketing materials and loan documents attached thereto, MERS has widely used and advertised

---

that use of a trade name establishes rights analogous to trademark rights. *Jim Dandy Co. v. Martha White Foods, Inc.,* 458 F.2d 1397, 1400 (C.C.P.A. 1972); *Weldon Farm Products, Inc. v. Packaging Enterprises, Inc.*, 197 U.S.P.Q. 584, 589 (T.T.A.B. 1977).

[5] The federal registration for MERS is owned by MERSCORP, the parent of MERS. MERS is the exclusive licensee for the services it provides under the MERS® mark and name. Hultman Decl., ¶ 4, Exh. A. As such, MERS has standing to assert infringement claims. *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F.Supp. 659, 666 (N.D. Cal. 1996) (exclusive trademark licensee has standing to assert trademark infringement claim).

1   its services using both MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS,

2   further enhancing the strength of these designations. *See Russell v. Caesar*, 62 U.S.P.Q.2d 1125,

3   1128 (N.D. Cal. 2001) (public association of a mark with a particular source considered in

4   determining distinctiveness); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th

5   Cir. 1988) (extensive advertising and duration in the business strengthen the distinctiveness of a

6   mark); *Ocean Garden, Inc. v. Marktrade Co.*, Inc., 953 F.2d 500, 506 (9th Cir. 1991) ("OGP has

7   done extensive advertising, and has used the mark for thirty years, which strengthens OGP's

8   mark."). These facts demonstrate the source identifying nature of MORTGAGE ELECTRONIC

9   REGISTRATION SYSTEMS and MERS, as well as the broad scope of MERS' reach across the

10  real estate finance industry.

11      Accordingly, there can be no doubt that MERS owns prior exclusive rights to

12  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS, and the mark strength

13  factor weighs heavily in favor of MERS.[6]

14          **2.       Defendants Are Using The Identical Name**

15      It is well-recognized that the greater the similarity between the marks, the greater the

16  likelihood of confusion. *GoTo.com,* 202 F.3d at 1206. Where, as here, marks are identical, the

17  services offered by the parties' may be quite different and still create a likelihood of confusion.

18  *Kohler Co. v. Baldwin Hardware Co.*, 82 U.S.P.Q.2d 1100 (T.T.A.B. 2007) (likelihood of

19  confusion found between identical marks used for plumbing fixtures and door hardware).

20      In this case, Defendants are using the *identical* name "Mortgage Electronic Registration

21  Systems, Inc." and the "mersservice@gmail.com" email address incorporates the identical

22  MERS® mark followed by a generic term, and Mr. Brosnan has filed to register the effectively

23  identical mark MORTGAGE ELECTRONIC REGISTRATION SYSTEM [sic], claiming it is in

24  use as well. Oakley Decl. Exhs. A-F.

25

---

26  [6] The fact that Defendants were able to incorporate corporations under a name identical to MERS does not give them rights that trump MERS' common law rights to its trade name and mark. For

27  example, California law expressly provides that the filing of articles of incorporation does "not of itself authorize the use in this state of a corporate name in violation of the rights of another under

28  … the common law, including rights in a trade name." Cal. Bus. & Prof. Code § 14417.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

Accordingly, this factor weighs heavily in MERS' favor.  *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1266 (Fed. Cir. 2002) (affirming likelihood of confusion on the grounds that PACKARD is the dominant and distinguishing factor of HEWLETT PACKARD and PACKARD TECHNOLOGY marks).

### 3.    Defendants' Bad Faith Intent Favors MERS

"The law has long been established that if an infringer adopts his designation with the intent of deriving benefit from the reputation of the trademark…, its intent may be sufficient to justify the inference that there are confusing similarities." *Brookfield*, 174 F.3d at 1059 (citations omitted).  Indeed, the intent factor "favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Id.*  Moreover, "when an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986) (citations omitted) ("One who adopts a mark similar to another already established in the marketplace does so at its peril, because the court presumes he 'can accomplish his purpose: that is, that the public will be deceived.'").  Here, Defendants' intent to trade on MERS' reputation and success by deceiving the public weighs in favor of a preliminary injunction. *Jockey Int'l., Inc. v. Burkard*, 185 U.S.P.Q. 201, 207 (S.D. Cal. 1975) ("Only in the most exceptional circumstances will injunctive relief be denied in the case of an intentional infringement.").[7]

Defendants' knew of MERS and its long-standing use of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS well before selecting an identical name for their companies and incorporating MERS into an email address.  Mr. Brosnan has filed actions in *pro*

---

[7] This would not be the first time that Mr. Jacobsen has acted in bad faith.  In a December 5, 2007, ruling in *In re Robert Edwin Jacobsen* (E.D. Tex. Case No. 07-41092), the bankruptcy court discussed various businesses involving Mr. Jacobsen and his wife, Alise Malikyar, and pre-filing asset transfers, stating that Mr. Jacobsen "has been far from honest and forthright."  In granting the Trustee's motion to convert to a Chapter 13 proceeding, the court said the "record contains ample evidence of [Mr. Jacobsen's] bad faith, including his failure to schedule assets and his attempts to frustrate his creditors."  Oakley Decl., Exh. I.  As for Mr. Brosnan, at least one Bay Area court found him to be a vexatious litigant and the Bankruptcy Court (N.D. Cal.) in 2005 prohibited him from filing additional bankruptcy cases for at least six months. *Id*. Exhs. L, M.

*per* naming Mortgage Electronic Registration Systems, Inc., the Delaware corporation, as a defendant.  Oakley Decl., Exhs. A, G, O.  For his part, Mr. Jacobsen is a licensed broker who necessarily would have become aware of MERS and whose wife owns or recently owned at least three properties, the deeds of trust for which are serviced by MERS.  Oakley Decl., Exhs. O, Q; *see also* footnote 2, *supra*.  It is no accident that Messrs. Brosnan and Jacobsen established companies in states where MERS is the mortgagee or beneficiary on untold numbers of mortgages or Deeds of Trust, but where it is not required to be qualified to do business or to name an in-state agent for service of process.  *See* footnote 1, *supra*.

Moreover, when Defendants' were served with legal documents that were intended for Plaintiff Mortgage Electronic Registration Systems, Inc., a Delaware corporation, immediately upon establishing their various companies, they clearly knew or should have known that the legal papers were intended for MERS.  Hoping to benefit from the confusion they intentionally caused, Defendants accepted service of hundreds of complaints and then threatened to throw away the documents unless MERS entered into a "fee arrangement" for forwarding the documents to MERS.  Patry Decl. ¶¶ 2,4, 9, Exhs. B, F.  As Mr. Jacobsen explained, MERS would be charged $1000 to review documents served on him, as well as charges ranging from $25 to $1000 for acting as a registered agent, sending the documents, rush service fees, etc.  Patry Decl., Exh. F.  Defendants have never expressed any intention to stop accepting service of documents that, on their face, are intended for MERS, a Delaware corporation.  To the contrary, they have ignored MERS demands that they stop using its name and stop improperly accepting service.

Defendants have acted in concert and induced each other's actions, as evidenced by the symmetry of their actions and Mr. Brosnan's recent *pro per* complaint asserting claims against MERS arising out of claims acquired from Mr. Jacobsen's wife.  *See* Patry Decl. ¶¶ 2-4, 9, Exhs. B and F; Oakley Decl., Exh. O; *see also* footnote 2, *supra*.  Indeed, the July 21, 2009, demand from Mr. Jacobsen to MERS used language nearly identical to that used by Mr. Brosnan in his communications to MERS one month earlier.[8]

---

[8] Mr. Brosnan and Mr. Jacobsen have been involved in numerous business dealings together, including REJ Properties, Inc., a company originally formed by Mr. Jacobsen (with Mr. Brosnan

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Thus, this factor supports a finding of likelihood of confusion as well.

2   **4.   Defendants' Services, If Offered, Are Related And Complementary To The Services MERS Offers And Would Be Promoted In Overlapping Channels Of Trade To Overlapping Consumers**

3

4   Services are related when the marks as used are related in the minds of the consuming

5   public.  *Sleekcraft,* 599 F.2d at 348 (services are related where the buying public would

6   reasonably believe they came from the same source if offered under the same mark).  The more

7   well-known a mark, the more likely that its use on noncompetitive products will cause consumer

8   confusion.  *Sunbeam Furniture Co. v. Sunbeam Co.*, 191 F.2d 141 (9th Cir. 1951).  Likewise,

9   convergent marketing and sales channels increase the likelihood of confusion.  *Sleekcraft*, 599

10  F.2d at 353.

11  MERS does not know whether Defendants are offering any legitimate business services at

12  this time.[9]  Mr. Brosnan's trademark application states he is providing real estate financing

13  services and the articles of incorporation for one of Mr. Jacobsen's companies states the business

14  is mortgage and nonmortgage loan brokerage services.  Oakley Decl., Exhs. C and F.   If

15  Defendants actually provide these services, the services by definition would be related or

16  complementary to MERS' services as the beneficial owner for mortgages and Deeds of Trusts

17  nationwide, and they would be promoted through overlapping market channels.  *See, e.g.,*

18  *Palantir Technologies Inc. v. Palantir.net, Inc.,* 2008 WL 152339 (N.D. Cal. 2008) (goods and

19  services related where companies both offered products and services to the computer software

20  industry using identical marks).  Given the thousands of lenders and loan servicers that are MERS

21  members and use MERS services, marketplace overlap is inevitable.

22  Thus, these factors weigh heavily in favor of a likelihood of confusion.

23  **5.   Actual Confusion Favors MERS**

24  Any evidence of actual confusion is strong proof of a likelihood of confusion.  *See, e.g.,*

25  _____

    as the agent for service of process) and the assets of which Mr. Brosnan acquired before filing in
26  *pro per* for bankruptcy on behalf of the company.  Oakley Decl. Exhs. J-L.

27  [9] There does not appear to be any business by the name of Mortgage Electronic Registration
    Systems, Inc. operating at the address provided by Mr. Brosnan in his federal trademark
    application, and the signage he claimed to have been using there is not visible to the public.
28  Oakley Decl., Exh. P.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Thane Intern., Inc. v. Trek Bicycle Co.*, 305 F.3d 894, 902 (9th Cir. 2002) ("Evidence of actual

2    confusion constitutes persuasive proof that future confusion is likely…").  In the very short time

3    that Defendants' have been using "Mortgage Electronic Registration Systems, Inc.,"

4    MORTGAGE ELECTRONIC REGISTRATION SYSTEM and "mersservice@gmail.com,"

5    Defendants already have caused confusion and mistake and have deceived the public into

6    believing that Defendants' are or represent MERS, or at the very least are associated with or

7    sponsored or approved by MERS when they are not.  Mr. Brosnan admits that Defendants' use of

8    the identical name "Mortgage Electronic Registration Systems, Inc." as a business name

9    registered with the California Secretary of State already has resulted in Defendants' being served

10   with over 200 summonses and other legal documents in California alone that were clearly

11   intended for MERS.  Patry Decl. ¶¶ 2, 4, Exh. B.  Mr. Jacobsen likewise admits that he has been

12   served with legal documents intended for MERS since establishing three companies with a name

13   identical to MERS.[10]  *Id.* ¶ 9, Exh. F.

14           Thus, this factor also weighs heavily in favor of MERS.

15                                         * * * * * * * *

16           The *Sleekcraft* factors overwhelmingly establish that Defendants are likely to continue to

17   cause significant confusion, irreparably harming MERS, confusing consumers and severely

18   burdening litigants in countless unrelated lawsuits.  Based upon this showing alone, Defendants'

19   should be restrained from all use of "Mortgage Electronic Registration Systems, Inc.,"

20   MORTGAGE ELECTRONIC REGISTRATION SYSTEM and "mersservice@gmail.com."

21   *Duncan McIntosh Co., Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1083 (C.D.

22   Cal. 2004) ("In a trademark infringement claim, a plaintiff is ordinarily entitled to a preliminary

23   injunction when it establishes a likelihood of confusion.").

24   _____

25   [10] Given the actual confusion, even a high level of care will not diminish the likelihood of
     confusion.  *Electropix v. Liberty Livewire Co.*, 178 F.Supp. 2d 1125 (C.D. Cal. 2001)

26   (preliminary injunction granted against infringement of mark LIVE WIRE by LIVEWIRE
     STUDIOS, LIVEWIRE MEDIA and LIVEWIRE NETWORK SERVICES for movie post-

27   production services); *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988)
     (where parties offer related goods under extremely similar marks, this factor does not mitigate

28   against a likelihood of confusion).  Thus, the "degree of care" factor also weighs in MERS' favor.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                    13                    PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
                                                       MOTION FOR TRO AND OSC

C.     **MERS Is Likely To Prevail On Its Unfair Business Practices Claims**

Section 17200 of the California Business and Professions Code makes actionable any business practice that is unlawful, unfair or fraudulent.  Section 17200 imposes strict liability on defendants.  It is, therefore, not necessary to show that the defendant intended to injure anyone in order to prevail on a Section 17200 claim.  *Community Assisting Recovery, Inc. v. Aegis Ins. Co.*, 92 Cal.App. 4th 886, 891 (2001); *Rothschild v. Tyco Intl. Inc.,* 83 Cal.App. 4th 488, 494 (2000).  MERS is likely to prevail on its Unfair Business Practices claims because Defendants are unfairly, fraudulently and unlawfully interfering with the judicial system, impersonating MERS and accepting service of documents intended for MERS, and demanding payment from MERS.

### 1.     Defendants' Business Practices Are Unfair And Fraudulent

The unfairness prong of California's unfair competition law is intentionally broad, allowing courts the maximum discretion to prohibit new schemes to defraud.  *Schnall v. Hertz Co.*, 78 Cal. App. 4th 1144 (2000).  A business practice is unfair when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal. App. 4th 886 (2001), *rev. denied* (2002).  In order to determine whether a business practice or act is unfair, courts examine the impact of the practice or act on its victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  *Emery v. Visa Internet Service Ass'n*, 95 Cal. App. 4th 952 (2002).  In essence, courts weigh the utility of the defendant's conduct against the gravity of the harm.  *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, (1997).  Fraudulent business practices, on the other hand, may be based on any representations to the public that are accurate on some level, but will nonetheless tend to mislead or deceive.  *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457 (2006).

Mr. Brosnan filed to incorporate a business in California using the Mortgage Electronic Registration Systems, Inc. name and the email address mersservice@gmail.com, on June 1, 2009, and filed to federally register MORTGAGE ELECTRONIC REGISTRATION SYSTEM [sic], despite his knowledge of MERS and its well-known names.  Oakley Decl. Exhs. A, F, G.  Similarly, Mr. Jacobsen filed to establish identically named companies on May 29, 2009, June 1,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                              14                    PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

2009 and June 3, 2009, in Texas, Oregon and Washington, respectively, also with knowledge of MERS and its long-standing use of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. Oakley Decl., Exhs. B-D, O, Q; Patry Decl. ¶ 9, Exh. F.

By Mr. Brosnan's own admission, less than three weeks after establishing a company with the identical name, Defendants had accepted <u>hundreds</u> of summonses and other legal documents on behalf of MERS in California.  Patry Decl. ¶ 2.  Mr. Jacobsen also admitted accepting service on behalf of MERS in states where he established imposter companies.  Patry Decl., Exh. F.  When they made it a routine business practice to unlawfully accept service, they knew that the documents were intended for MERS because Defendants' knew of MERS; Defendants had not been in business long enough to be the target of so many complaints; and on their face, the documents are intended for Plaintiff Mortgage Electronic Registration Systems, Inc., <u>a Delaware entity</u>.  Defendants' business practices are also fraudulent and unfair in that Defendants represent to the public that their newly established business entities are authorized to accept summonses and other legal documents on behalf of MERS, when Defendants know that is not the case.

### 2.    Defendants' Business Practices Are Unlawful

The unlawful business practices actionable under Section 17200 include any business practices that violate any law.  Cal. Code Civ. Proc. § 1209(a)(8); *Farmers Ins. Exch. v. Sup. Ct.*, 826 P.2d 730 (Cal. 1992) (1992).  In effect, Section 17200 makes a violation of any underlying law a per se violation of Section 17200.  *Kasky v. Nike, Inc.*, 27 45 P.3d 243 (Cal. 2002) ; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999) .

Defendants violated the law by willfully interfering with the judicial system.  California Code of Civil Procedure Section 1209 provides that "acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court," including "unlawful interference with the process or proceedings of a court."  Cal. Code Civ. Proc. § 1209(a)(8).  "Process" refers to "all writs, warrants, <u>summons</u>, and orders of courts of justice, or judicial officers."  *See* Cal. Gov. Code § 26660 (emphasis added).

Defendants further violated the law by seeking to extort payments from MERS for their improper actions (Cal. Crim. Code §§ 518, 523), and also by posing as MERS when accepting

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                          15                    PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
                                                              MOTION FOR TRO AND OSC

service of process on its behalf at a time when they knew or should have known the hundreds of complaints served on them were intended for MERS (Cal. Crim. Code § 529).

### D.     MERS Is Likely To Prevail On Its Conversion And Trespass To Property Claims

MERS is also likely to prevail on its conversion and trespass claims.  Conversion and trespass to personal property both involve the wrongful exercise of dominion over personal property of another.  *Moore v. Regents of Univ. of Calif.*, 793 P.2d 479 (Cal. 1990); *Farmers Insurance Exchange v. Zerin* 53 Cal.App. 4th 445, 451 (1997).  Conversion exists where: (1) plaintiff has the right to possess personal property; (2) defendant's disposition of the property is inconsistent with plaintiff's rights; and (3) damages.  *See, e.g., Fremont Indem. Co. v. Fremont General Co.*, 148 Cal.App. 4th 97, 119 (2007).  Trespass to personal property lies where there is *any* intentional interference with the possession of personal property that has proximately caused injury.  *Thrifty-Tel, Inc. v. Bezenek,* 46 Cal. App. 4th 1559 (1996).  The difference between conversion and trespass to personal property is merely the degree of interference.  *Zaslow v. Kroenert*, 176 P.2d 1 (Cal. 1946); *Intel Co. v. Hamidi*, 71 P.3d 296 (Cal. 2003) (where the conduct does not amount to a substantial interference, the cause of action is for trespass).

For conversion, an act must be knowing or intentional.  However, wrongful intent is not necessary.  Thus, regardless of Defendants' intent or motive in failing to provide MERS its legal documents, Defendants' refusal to give the documents to MERS constitutes an impermissible and actionable interference with MERS' property rights.  *See Krusi v. Bear, Stearns & Co.*, 144 Cal.App.3d 664, 672 (1983) ("An action for conversion rests simply on the interference with the plaintiff's dominion over his property.  The action is a species of strict liability in which the defendant's good faith, due care, ignorance or mistake are irrelevant and may not be set up as a defense."); *see also Henderson v. Security National Bank*, 72 Cal.App.3d 764, 770-71 (1977) ("[P]laintiff's right of redress [does not depend] on his showing, in any way, that the defendant did the act in question from wrongful motives, or generally speaking, even intentionally; and hence the want of such motives, or of intention, is no defense.")

1.   **MERS  Owns Or Has The Right To Possess The Legal Documents In Defendants' Possession**

Either title or a right to possession may be sufficient to form the grounds for a conversion claim.  *Nat'l Bank of New Zealand v. Finn,* 253 P. 757 (Cal. 1927).  Here, MERS has both the title and the right to possess legal documents that are addressed to Plaintiff Mortgage Electronic Registration Systems, Inc., a Delaware corporation.  Defendants' themselves acknowledged that the documents properly belong to MERS when they contacted MERS and demanded payment for accepting summonses and legal filings naming MERS and for sending those documents to MERS.  Patry Decl. ¶¶ 2, 4, 9, Exhs. B, F.

2.   **Defendants' Disposition Of MERS' Property Is Inconsistent With MERS' Property Rights**

A conversion claim is proper where a defendant actually interferes with the plaintiff's ownership or right of property.  *Farmers Ins. Exchange,* 53 Cal. 4th at 451.  The interference need occur only at the time of the conversion.  *Enterprise Leasing Co. v. Shugart Co.*, 231 Cal.App. 3d 737, 748 (1991) (even if the plaintiff later regains possession of the property, it does not preclude a conversion action).

Here, Defendants' first interference with MERS' property right occurred when Defendants' accepted service of summonses and other legal documents that it knew or should have known were intended for MERS.  Patry Decl. ¶¶ 2 ,4, 9 Exhs. B, F.  Defendants' second interference occurred when they demanded that MERS pay for forwarding the documents to MERS, again interfering with MERS' property right in its legal documents.  *Id.*; *see also Schroeder v. Auto Driveaway Co.*, 523 P.2d 662, 668 (Cal. 1974) (willful failure to return property to plaintiff can serve as a foundation for a conversion claim).  Thus, even if MERS' property was initially lawfully acquired by Defendants', which it was not, Defendants' unjustified refusal to turn over the legal documents to MERS alone constitutes conversion.

3.   **MERS Has Been And Will Be Foreseeably Damaged By Defendants' Conversion Of Its Property**

MERS has been and will continue to be damaged by Defendants' conversion of its property.  If MERS does not receive summonses, it is foreseeable that judgment against MERS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                              17                    PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1    will be entered by default when MERS fails to appear.  When the plaintiffs in those actions seek

2    to enforce the judgments against MERS, MERS will have to have the judgments set aside at

3    MERS' expense, thereby causing real damage to MERS.

4    　　　　All of the facts referenced above overwhelmingly establish that Defendants' should be

5    restrained from further accepting legal documents intended for MERS and should be ordered to

6    turn over the documents in its possession that belong to MERS.

7    　　　**E.　　MERS Will Suffer Irreparable Harm If An Immediate TRO Is Not Granted**

8    　　　　The irreparable harm prong of the TRO analysis is presumed satisfied here since MERS

9    has demonstrated a likelihood of confusion.  *GoTo.com*, 202 F.3d at 1205 n.4; *K-Swiss, Inc. v.*

10   *USA AISIQI Shoes, Inc*., 291 F. Supp. 2d 1116, 1120 (C.D. Cal. 2003).  The facts evident here,

11   however, further compel a finding of irreparable harm.

12   　　　　Defendants' use of the "Mortgage Electronic Registration Systems, Inc.," MORTGAGE

13   ELECTRONIC REGISTRATION SYSTEM and "mersservice@gmail.com" designations has

14   already created confusion and caused damage to MERS.  Defendants have accepted summonses

15   and complaints naming MERS, and yet MERS has not been provided the documents and has no

16   reasonable way to obtain the documents or contact the affected litigants.[11]  Defendants may be

17   expanding their scheme to additional states, since they already have filed in at least five states,

18   further exacerbating the problem for MERS and innocent third parties.  Further, if Defendants are

19   providing the services described in their respective trademark application and articles of

20   incorporation as they claim to be, then consumers are likely to believe – falsely – that Defendants

21   are MERS, or that they are affiliated with, endorsed by or sponsored by MERS, tarnishing

22   MERS' goodwill (particularly given recent court rulings regarding Messrs. Brosnan and

23   Jacobsen, *see* footnote 7).

24   　　　　Unless Defendants are immediately restrained from using "Mortgage Electronic

25

26   [11] MERS has attempted to mitigate the harm by placing a notice on its web site warning against
     service of process on Defendants and also by notifying its members.  These steps cannot,

27   however, prevent more confusion in the future nor rectify past confusion in the marketplace as to
     any affiliation or endorsement by MERS of Defendants, nor correct faulty service of process in

28   untold numbers of cases involving innocent third parties.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB1/63445318.2　　　　　　　　18　　　　　PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

Registration Systems, Inc.," MORTGAGE ELECTRONIC REGISTRATION SYSTEM and the mersservice@gmail.com email address, Defendants will continue to receive summonses and other legal documents intended for MERS and will likely continue registering the business name "Mortgage Electronic Registration Systems, Inc.," in other jurisdictions and accepting summonses and legal documents on behalf of MERS in those jurisdictions as well.  Accordingly, this factor strongly weighs in favor of a TRO in this case.

### F.    The Balance Of Hardships Strongly Favors MERS

Because MERS has established both a likelihood of success on the merits and irreparable harm, the Court need not consider a balance of hardships in order to grant injunctive relief.  In *KOS Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004), the Court held that, because the plaintiff had established a likelihood of success on its trademark infringement and unfair competition claims, an injunction should have been granted despite the defendant's showing that it would suffer a financial loss.  *Id.* at 728-30.  Nonetheless, a weighing of the parties' hardships in this case further demonstrates that a preliminary injunction is warranted.

Defendants had a duty to ensure that their adoption of names for their businesses related to real estate financing did not cause confusion in the marketplace.  *Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F.Supp. 2d 567, 583 (E.D. Va. 2000) ("The law provides that a junior user of a mark has an affirmative duty to select a mark that is not confusing.").  Moreover, there is no indication that Defendants are operating legitimate businesses with the companies they created using MERS' name, so a TRO here will not cause Defendants undue financial hardship or impede consumers' ability to purchase a particular type of service.

Likewise, it will not harm Defendants to turn over MERS' summonses and other legal documents to MERS because Defendants' have no right to the documents in the first instance. Defendants' have said that they may throw away the documents if MERS does not pay Defendants' for their delivery, so requiring them to turn over the documents can cause no harm. On the other hand, if MERS does not receive its documents from Defendants', it is foreseeable that judgment against MERS will be entered by default when MERS fails to appear in the various proceedings for which Defendants' have accepted service on MERS' behalf.  When the plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2

19

PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
MOTION FOR TRO AND OSC

1    seek to enforce the judgments against MERS, MERS will have to have the judgments overturned

2    at MERS' expense, thereby causing real damage to MERS.  Moreover, MERS risks serious harm

3    to its reputation and goodwill – developed over more than a decade – if members of the general

4    public or of the real estate finance industry in particular falsely believe that Defendants and their

5    companies are MERS, or are affiliated with, sponsored by or endorsed by MERS.

6        Thus, the balance of hardships clearly favors the Court's grant of a TRO against

7    Defendants.

8        **G.    The Courts Grant Of A TRO Serves The Public Interest**

9        "It is well established that trademark law protects not only the private interests of the

10   trademark owner but also the public's interest in not being confused by the infringing

11   products…"  *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004)

12   (citations omitted).  Thus, the purchasing public is an unnamed party in every action for

13   trademark infringement."  *Id.*  Here, a preliminary injunction would protect consumers from

14   being deceived by Defendants' use of confusingly similar names and marks to MERS'

15   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS and MERS names and marks.

16       A TRO would also prevent further harm to borrowers, lien holders and other persons or

17   entities who seek to take action in relation to property in California for which MERS is the

18   mortgagee or beneficiary, or those involved in any way in the real estate loans who may be

19   mislead by Defendants' choice of name (whether as a borrower, lender or servicer).  As a result of

20   Defendants' use of Mortgage Electronic Registration Systems, Inc. as a business name registered

21   with the California Secretary of State, borrowers and lien holders already have been deceived into

22   believing that documents should be served to the identically-named Defendants.  Unless

23   Defendants' are immediately restrained from using "Mortgage Electronic Registration Systems,

24   Inc.," MORTGAGE ELECTRONIC REGISTRATION SYSTEM and

25   "mersservice@gmail.com," Defendants will continue to cause confusion in the marketplace

26   regarding an affiliation or endorsement by MERS, to improperly receive summonses and other

27   legal documents intended for MERS, and to continue establishing companies with the name

28   "Mortgage Electronic Registration Systems, Inc.," in other jurisdictions and accepting

1    summonses and legal documents on behalf of MERS in those jurisdictions as well.  For these

2    reasons as well, a TRO is necessary to prevent widespread irreparable harm.

3    **IV.     UNDER THE UNIQUE FACTS HERE, IT IS WELL WITHIN
            THE COURT'S DISCRETION TO DECLINE TO REQUIRE
4            A BOND, OR TO REQUIRE A NOMINAL BOND**

5           Rule 65 of the Federal Rules of Civil Procedure requires the movant in a TRO proceeding

6    to provide security in an amount the court considers proper to cover damages sustained by a party

7    that is wrongfully enjoined, unless not warranted under the circumstances.  Fed. R. Civ. Proc.

8    65(c); *see Matek v. Murat*, 862 F.2d 720, 733 (7th Cir. 1987) (damages under injunction bond are

9    limited to those actually and proximately resulting from the effect of the injunction itself as

10   opposed to litigation expenses independent of the injunction).

11          In this instance, the bond should be nominal or nothing at all because entry of a TRO

12   cannot possibly cause any harm to Defendants.  It is well within the Court's discretion at this

13   juncture to require a nominal bond or no bond at all.  *See GoTo.com*, 202 F.3d at 1211 (ordering a

14   nominal bond, noting that Rule 65(c) "places within the discretion of the district court the amount

15   of the bond"); *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (nominal bond or no

16   bond acceptable where there was no realistic likelihood of harm to defendant from enjoining its

17   conduct).  Defendants simply have no right to cause marketplace confusion, disrupt the legal

18   system, and harm MERS reputation by using MERS names and marks and accepting service of

19   process intended for MERS.

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                                    21                 PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
                                                                    MOTION FOR TRO AND OSC

1    **V.      CONCLUSION**

2           To prevent further confusion, irreparable harm to MERS and disruption of legal process

3    for hundreds of third parties in as many as five states, MERS respectfully requests that the Court

4    grant its Motion for a Temporary Restraining Order and Order to Show Cause.

5    Dated: August ___, 2009                          MORGAN, LEWIS & BOCKIUS LLP

6

7                                                 By _____

8                                                    Carla B. Oakley
                                                    Attorneys for Plaintiff Mortgage Electronic
9                                                    Registration Systems, Inc., a Delaware
                                                    corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63445318.2                          22                PLAINTIFF'S MPA IN SUPPORT OF *EX PARTE*
                                                         MOTION FOR TRO AND OSC