1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    MORTGAGE ELECTRONIC REGISTRATION      No:  C 09-3600 SBA
     SYSTEMS, INC., a Delaware
9    corporation,                          ORDER GRANTING PLAINTIFF'S
                                           MOTION FOR PRELIMINARY
10             Plaintiff,                   INJUNCTION

11        vs.

12   JOHN BROSNAN, MORTGAGE
     ELECTRONIC REGISTRATION SYSTEMS,
13   INC., a California corporation,
     and ROBERT JACOBSEN,
14
               Defendants.
15   _____/

16

17        Plaintiff Mortgage Electronic Registration Systems, Inc.

18   (Plaintiff MERS), a Delaware corporation, brings the instant

19   action against John Brosnan, Robert Jacobsen and "Mortgage

20   Electronic Registration Systems, Inc." (a California corporation

21   recently formed by Mr. Brosnan), alleging federal claims for

22   trademark infringement and false designation of origin, along with

23   various state law claims for conversion, violations of

24   California's Unfair Competition Law (UCL) and conversion and

25   trespass to personal property.[1]

26   _____

27        [1] Because Defendants have formed companies using the same
     name as Plaintiff, the Court will distinguish them by reference to
28   Plaintiff MERS and Defendant MERS.

1    Plaintiff MERS moves for a preliminary injunction prohibiting
2  Defendants from using Plaintiff MERS' name and accepting service
3  of process of documents intended for Plaintiff MERS.  In addition,
4  Plaintiff MERS seeks the return of any documents in Defendants'
5  possession that were intended for delivery to Plaintiff MERS.  The
6  matter was heard on August 26, 2009.  Having considered oral
7  argument and all of the papers submitted by the parties, the Court
8  grants Plaintiff MERS' motion.[2]

9                              BACKGROUND

10   Plaintiff MERS is a Delaware corporation that provides e-
11 commerce real estate mortgage and related services to lenders and
12 loan servicers, among others.  Compl. ¶ 7; Hultman Dec. ¶ 3.  For
13 approximately the last thirteen years, Plaintiff MERS has used the
14 name Mortgage Electronic Registration Systems as well as the MERS®
15 mark in connection with its business operations.  <u>Id.</u>  Plaintiff
16 MERS is owned by MERSCORP, Inc., which maintains a database
17 containing information on approximately 60 million mortgages and
18 deeds of trust, 9.7 million of which relate to properties located
19 in California.  Hultman Dec. ¶¶ 3, 7.  This database tracks
20 mortgage servicing rights and beneficial ownership interests that
21 are bought and sold between Plaintiff MERS' members, which include
22 some of the country's largest mortgage companies and banks.
23 <u>Id.</u> ¶ 3.

24   In the vast majority of the loans maintained in MERSCORP's
25 database, Plaintiff MERS is listed as the mortgagee or

26 ─────────────────
27   [2] Messrs. Brosnan and Jacobsen filed individual pro se
oppositions, while Defendant MERS filed its opposition through
counsel.  All three oppositions were filed after the 5:00 p.m.
28 deadline on August 21, 2009.

beneficiary, thus granting it legal title to the property.  Id.
However, the beneficial ownership interests and servicing rights
remain with the member, i.e., the lender or servicing company.
Id.  Because Plaintiff MERS always remains listed as the mortgagee
or beneficiary, its members are able to buy and sell mortgages
without incurring the time and expense associated with mortgage
lien assignments.  Id.  Because Plaintiff MERS is identified on
most mortgages as the beneficiary, it generally is served with
legal documents in matters involving the property.  Patry Dec.
¶ 11.  In 2009 alone, Plaintiff MERS has been served in
approximately 2,500 lawsuits involving properties in California,
Arizona, Texas, Oregon and Washington.  Id.

On June 19, 2009, Mr. Brosnan contacted Joseph Patry, in-
house counsel for MERSCORP who also serves as counsel for
Plaintiff MERS, claiming that he had registered an entity
identified as "Mortgage Electronic Registration Systems Inc." with
the California Secretary of State.  Id. ¶ 2.  Mr. Brosnan stated
that he or his entity's agent for service of process had
"accepted" approximately 200 legal documents that were intended
for Plaintiff MERS.  Id.  In addition, he demanded that Plaintiff
MERS enter into a fee arrangement with him for forwarding those
documents to Plaintiff MERS.  Id.  On behalf of Plaintiff MERS,
Mr. Patry responded by sending Mr. Brosnan a cease and desist
letter (by UPS and email) demanding that he cease using Plaintiff
MERS' name and that he immediately return any legal documents
intended for Plaintiff MERS.  Id. ¶ 3 and Exh. A.

Shortly after Mr. Patry sent his letter, Mr. Brosnan
responded with two emails in which he insisted that he had the

right to use the Plaintiff MERS' name.  Id. ¶ 4.  He demanded that Plaintiff MERS cease using its name in California and threatened to seek a temporary restraining order if it refused to do so.  Id. Exh. B.  As for the documents mistakenly served on him, Mr. Brosnan claimed he had the right to "discard" any of them that did not pertain to Defendant MERS.  Id.  He further stated:  "If you want me to forward documents to you I will but we will need to enter into a fee agreement."  Id.  Mr. Brosnan signed the letter as "CEO – Mortgage Electronic Registrations Systems Inc."  Id. The California Secretary of State's website indicates that "Mortgage Electronic Registrations Systems Inc." was registered as a corporation in California on June 1, 2009, and the email address for the agent for service of process is listed as "MERSSERVICE@GMAIL.COM."  Oakley Dec. Exh. A.

On July 17, 2009, Plaintiff MERS learned that an entity had been formed in Arizona, again using its name, and that an application for its incorporation was pending.  Id. ¶ 5.[3]  The Arizona Corporation Commission's website lists Kerease Margita as the contact for the company.  Id.  Neither Ms. Margita nor the Arizona entity has any affiliation with Plaintiff MERS.  Id. ¶ 6. MERS sent Ms. Margita a letter at the address listed, demanding that the application for incorporation be withdrawn and that the Arizona entity cease using Plaintiff MERS' name.  Id. ¶ 7.  A few days later, on July 21, 2009, Mr. Patry received a call from "David" stating that Ms. Margita did not own the Arizona entity

---

[3] Information from Arizona public records indicates that Mr. Brosnan submitted an application to form a corporation named "Mortgage Electronic Registration Systems, Inc." with the state on or about June 8, 2009.  Id. Exh. C.

and that she was serving solely as its agent for service of process.  Id. ¶ 8.  A few minutes after the call, Plaintiff MERS received an email from michael@incsmart.biz directing it to send its "threatening letters" to Mr. Brosnan at an address in Las Vegas.  Id.

In the afternoon of July 21, 2009, the same day he received a call from David, Mr. Patry received an email from Robert Jacobsen who claimed to be the President of "Mortgage Electronic Registration Systems, Inc." in Texas, Oregon and Washington.  Id.[4] Like Mr. Brosnan, Mr. Jacobsen claimed that he had the exclusive right to use Plaintiff MERS' name and demanded that Plaintiff MERS cease using its name in those particular states.  Id.  He also threatened to seek a temporary restraining order in the event Plaintiff MERS refused to comply.  Id.  Mr. Jacobsen stated that he had received "numerous filings" and that he has had to review them to determine if they were intended for Plaintiff MERS.  Id. Mr. Jacobsen also told Mr. Patry that he would forward any documents belonging to Plaintiff MERS on the condition that it "reimburse" him "for the cost to review and ship these documents." Mr. Jacobsen listed his "fees" as follows:  (1) $1,000 for "legal review cost"; (2) $25 for "Registered agent fee"; (3) $200 for "Electronic format"; and (4) $1,000 for "10 day rush service." Id. Exh. F.

On August 6, 2009, Plaintiff MERS filed the instant action in this Court, accompanied by an Ex Parte Application for Temporary

---

[4] Mr. Jacobsen apparently formed a corporation under the MERS name in Texas and Oregon on or about June 1, 2009, and in Washington in June 3, 2009.  Id. Exhs. B, C, D.

Restraining Order and Order to Show Cause.  On August 12, 2009,
the Court entered a temporary restraining order prohibiting
Defendants from:

> (A)  Using or applying to register MORTGAGE
> ELECTRONIC REGISTRATION SYSTEMS (with or
> without an "S"), MERS or any confusingly
> similar designations, as a mark, business
> name, domain name, email address, meta-tag or
> otherwise; and
>
> (B)  Accepting service of process or other
> documents intended for MERS, including
> summonses, complaints, subpoenas, or any other
> legally-required notices naming or involving
> mortgage liens held by Mortgage Electronic
> Registration Systems, Inc., a Delaware
> corporation.

In addition, the Court ordered Defendants to forward any documents
in their possession intended for Plaintiff MERS to the intended
recipient within three days of being served with the order.[5]
According to Plaintiff MERS, Defendants had not returned any
documents as of the time their Reply was filed.  Oakley Reply
Decl. ¶ 7.

_____

[5] Because Defendants had not yet filed a response, the Court
declined to consider Plaintiff MERS' fourth request for an order
directing Defendants to take the necessary actions formally to
change the name of or dissolve any companies established under the
name Mortgage Electronic Registration Systems, Inc., MERS® or
anything confusingly similar.  However, this request will be
considered in connection with the present motion.

LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008). "[T]he required showing of harm varies inversely with the required showing of meritoriousness." Indep. Living Ctr. of S. Cal., Inc. v. Shewry, 543 F.3d 1047, 1049 (9th Cir. 2008) (quoting Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987)).

DISCUSSION

I.   Likelihood of Success on the Merits

     A.   Lanham Act Claims

     Plaintiff MERS' first and second claims are for trademark infringement, 15 U.S.C. § 1114, and false designation of origin, 15 U.S.C. § 1125, respectively. "Trade-mark and trade name infringement, or unfair competition, preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods." New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979). "To prevail on its trademark infringement claim, [a plaintiff] must show that: (1) it has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion." Applied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007). A false designation claim is slightly different, because a trade name cannot be registered. Accuride Int'l Inc. v. Accuride Corp., 871 F.2d 1531,

1534 (9th Cir. 1989).  Nevertheless, the ultimate issue in both

claims turns on the likelihood of confusion.  Id. (holding that

claims for trademark and tradename claims are evaluated under the

same test for likelihood of confusion).[6]

1.  Protectable Mark

Both registered and unregistered trade names and trademarks

are subject to protection under the Lanham Act.  Halicki Films,

LLC v. Sanderson Sales and Mktg., 547 F.3d 1213, 1225-26 (9th Cir.

2008); see also GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199,

1205 n.3 (9th Cir. 2000) (noting that "the same standard" applies

to infringement claims, irrespective of whether the marks or names

are registered).  Defendants argue that they have the right to use

the Plaintiff MERS' name because Messrs. Brosnan and Jacobsen were

able to incorporate (or apply to incorporate) their entities using

the Plaintiff MERS' name in California, Arizona, Texas, Oregon and

Washington.[7]  However, merely incorporating an entity does not

authorize the use of a name that rightfully belongs to another

party.  See Cal. Bus. & Prof. Code § 14417 ("The filing of

articles of incorporation pursuant to Section 200 of the

Corporations Code shall not of itself authorize the use in this

state of a corporate name in violation of the rights of another

_____

[6] Plaintiff MERS registered MERS® as a service mark with the U.S. Patent and Trademark Office.  Hultman Exh. A.  The name Mortgage Electronic Registration System is not registered as a trademark.

[7] Defendants assert, without any evidentiary support, that Plaintiff MERS previously incorporated itself in California but that its corporate status was suspended for having failed to pay taxes.  In fact, Plaintiff MERS has never incorporated or attempted to incorporate in California.  Hultman Reply Dec. ¶¶ 3-4.  The entity to which Defendants refer has no affiliation with Plaintiff MERS.

under the federal Trademark Act."). For purposes of trademark protection, it is the date of first use that is critical. _Sengoku Works Ltd. v. RMC Int'l, Ltd._, 96 F.3d 1217, 1219 (9th Cir. 1996). Here, it is undisputed that Plaintiff MERS used the name Mortgage Electronic Registration Systems, Inc., in commerce long before Defendants.

Next, Defendants contend that Plaintiff MERS previously abandoned its application to register its name with the Patent and Trademark Office, and that Mr. Brosnan now holds the trademark registration for Plaintiff MERS' name. The record does not support Defendants' claim. Mr. Brosnan submitted a trademark application on May 26, 2009; however, the application has not been granted and remains pending. Oakley Reply Dec. Exh. F. In any event, "it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." _Id._ As noted, Plaintiff MERS' use of its name preceded Defendants' use by more than a decade.

2.    Likelihood of Confusion

In determining whether there is a likelihood of confusion, a court is to weigh the following factors: 1) the strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) the defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. _See AMF Inc. v. Sleekcraft Boats_, 599 F.2d 341, 348-49 (9th Cir. 1979). The similarity of the marks, proximity of the goods and marketing

channels used constitute "the controlling troika in the Sleekcraft analysis." GoTo.com, Inc., 202 F.3d at 1205.  These three factors are the most important.  See Brookfield Commc'ns, Inc. v. W. Coast Entmt. Corp., 174 F.3d 1036, 1055 n.16 (9th Cir. 1999).

    a) Strength of the Mark

  The strength of the trademark is evaluated in terms of its conceptual strength and commercial strength.  Id.  "Marks are often classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful."  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).  The latter three characterizations are inherently more distinctive and, hence, are associated with stronger marks.  Id.  The name Mortgage Electronic Registration Systems is more descriptive than suggestive, because it does not require much imagination to understand the type of business that Plaintiff MERS operates.  Id. n.8 ("Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood.").

  Descriptive marks are nonetheless protectable upon a showing of acquired distinctiveness.  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 606 (9th Cir. 1995). The more likely a mark is to be remembered and associated in the public's mind with the mark's owner, the greater protection the mark is accorded by trademark laws.  See GoTo.com, 202 F.3d at 1207.  In this case, Plaintiff MERS has presented undisputed evidence that its name has commercial strength.  Over 4,593 member lenders and loan servicers use Plaintiff MERS' services (among

them are the nation's best known financial institutions), and
Plaintiff is identified as the mortgagee or beneficiary in close
to 60 million mortgages and deeds of trust.  Hultman Dec. ¶¶ 3, 6.
In addition, Plaintiff MERS has used and marketed its corporate
name for the last thirteen years, id. Dec. ¶¶ 10-17, which further
supports the strength of its name.  See E. & J. Gallo Winery v.
Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) (affirming
finding that plaintiff's trademark was strong, based on long
continuous use); Accuride Int'l, Inc., 871 F.2d at 1536
("extensive advertising, length of exclusive use, public
recognition and uniqueness" strengthen mark).  The Court finds
that Plaintiff MERS has presented sufficient evidence to support
the strength of its mark.

     b)  Proximity of Goods

  The next factor concerns the proximity or relatedness of the
good or services represented by the potentially infringing marks.
See Sleekcraft, 599 F.2d at 348-49.  Defendants make the
conclusory and unsupported assertion that there is no likelihood
of confusion because they do not sell the same products.  Though
Mr. Brosnan does not specify the nature of his business, his
federal trademark application discloses that he intends to use
Plaintiff MERS' name for "Real estate financing services."  Oakley
Reply Decl. Exh. F.  As for Mr. Jacobsen, he states that his
"newly formed companies [will] . . . provide information free of
charge, to persons wanting to know about lending, tracking,
foreclosure practices of lenders and their 'nominee
beneficiaries.'"  See Mr. Jacobsen Opp'n at 5-6.  Although these
descriptions do not suggest that Plaintiff MERS and Defendants are

direct competitors, it is apparent that their respective
businesses are sufficiently related to the real estate and
mortgage industry to result in consumer confusion.  See _Palantir_
_Techs. Inc. v. Palantir.net, Inc._, 2008 WL 152339 at *6 (N.D. Cal.
2008) (use of identical marks likely to cause confusion where
plaintiff and defendant's goods and services were related
generally to the computer software industry).  The parties'
services are sufficiently proximate to favor Plaintiff MERS.

           c)    Similarity of the Marks

The greater the similarity between the two marks at issue,
the greater the likelihood of confusion.  _Entrepreneur Media, Inc._
_v. Smith_, 279 F.3d 1135, 1144 (9th Cir. 2002).  This factor weighs
heavily in favor of Plaintiff MERS, because the marks are
identical.  In addition, Mr. Brosnan has incorporated the MERS®
trademark almost verbatim into his email address (i.e.,
merservice@gmail.com) in connection with his appropriation of
Plaintiff MERS' name.  See _Perfumebay.com Inc. v. EBAY, Inc._, 506
F.3d 1165, 1174 (9th Cir. 2007) ("PerfumeBay" confusingly similar
to "eBay" mark); _Brookfield Commc'ns, Inc._, 174 F.3d at 1055
("moviebuff.com" was essentially the same as "moviebuffonline.com"
and likely to confuse the public).  This factor weighs in favor of
Plaintiff MERS.

           d)    Evidence of Actual Confusion

The evidence of actual confusion is undisputed.  In
correspondence to Plaintiff MERS, both Messrs. Brosnan and
Jacobsen admit to having received numerous documents that were
intended for Plaintiff MERS.  Patry Dec. ¶ 2; _id._ Exhs. B, F, G.
In fact, Mr. Brosnan alone has indicated that he has approximately

200 of such documents.  Id. ¶ 2.  Evidence that use of a mark or name has already caused actual confusion as to the source of a product or service is "persuasive proof that future confusion is likely."  Sleekcraft, 599 F.2d at 352; Playboy Enters., Inc. v. Netscape Commc'ns, 354 F.3d 1020, 1026 (9th Cir. 2004) ("actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion . . . .").  This factor weighs in favor of Plaintiff MERS.

> e)   Defendants' Intent

The defendants' intent is a critical element.  See Interstellar Starship Servs., Ltd. v. Epix, Inc., 184 F.3d 1107, 1111 (9th Cir. 1999) ("intent to deceive is strong evidence of a likelihood of confusion").  "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse."  Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1148 (9th Cir. 2002).  In this case, it is apparent that Defendants intentionally used the name Mortgage Electronic Registration Systems, Inc., to confuse the public.  Mr. Brosnan was aware of Plaintiff MERS' existence before purporting to form Defendant MERS, as evidenced by his pro se lawsuits filed against Plaintiff MERS in this Court.  See Oakley Dec. Exhs. F, H.  Notably, Mr. Brosnan's recent pro se action against Plaintiff MERS filed in the Central District includes extensive allegations regarding Plaintiff MERS, thus revealing his knowledge of its business operations.  Id. Exh. O. ¶¶ 61-68.  The intentional, bad faith nature of his conduct is further shown by the fact that he admittedly received documents intended for Plaintiff MERS that he has threatened to "discard" unless Plaintiff MERS agreed to a "fee

- 13 -

arrangement" as a condition of their return.  Patry Dec. ¶¶ 2, 4,
9, Exhs. B, F.

With respect to Mr. Jacobsen, the evidence suggests that he
was acting in concert with Mr. Brosnan.  Mr. Jacobsen's conduct
largely mirrors that of Mr. Brosnan; namely, he formed entities
using the Plaintiff MERS' name around the same time as Mr.
Brosnan, which resulted in documents intended for Plaintiff MERS
being mistakenly served on the newly-formed entities.  Like Mr.
Brosnan, Mr. Jacobsen has refused to forward those documents to
Plaintiff MERS unless it agrees to enter into a fee agreement for
their return.  The relationship between Messrs. Brosnan and
Jacobsen is further shown by the fact that Mr. Brosnan is
prosecuting his Central District action against Plaintiff MERS
based on an assignment of rights from Mr. Jacobsen's wife.  Oakley
Dec. Ex. O ¶ 14.

Defendants deny that they intentionally selected the name
Mortgage Electronic Registration Systems to cause confusion.  They
claim that they used Plaintiff MERS' name because it was
"available" in California, Arizona, Washington, Oregon and Texas.
However, Defendants never explain why it was necessary for them to
form their entities using a name identical to Plaintiff MERS,
particularly given their awareness of Plaintiff MERS' standing in
the real estate mortgage industry.  The Court thus concludes that,
based on the uncontroverted evidence presented, Defendants were
acting in concert and that their use of the Plaintiff MERS' name
was intentional.

f)   Summary

In sum, the relevant Sleekcraft factors[8] support the conclusion that Defendants' use of Plaintiff MERS' name and mark was intended to and has, in fact, caused actual public confusion. Indeed, it appears that Defendants' conduct is in bad faith, as evidenced by their refusal to return documents intended for Plaintiff MERS unless and until it agrees to pay for their return. This evidence is sufficient to show, for purposes of the instant motion, that Defendants' use of Plaintiff MERS' marks is likely to cause confusion.  Accordingly, the Court finds that Plaintiff MERS has shown a likelihood of success on the merits of its claims under the Lanham Act.

3.   Fair Use

Defendants contend that their use of the Plaintiff MERS' name is permitted as classic and nominative fair use.  "The fair use defense only comes into play once the party alleging trademark infringement has shown by a preponderance of the evidence that confusion is likely."  KP Permanent Make-Up, Inc. v. Lasting Impression I, 408 F.3d 596, 608-609 (9th Cir. 2005).  Under Ninth Circuit analysis, there are two distinct forms of the fair use defense: "classic" or statutory fair use and "nominative" fair use.  Brother Records, Inc. v. Jardine, 318 F.3d 900, 903 (9th Cir. 2003).  Application of the classic fair use doctrine "is appropriate where a defendant has used the plaintiff's mark only

---

[8] The Court has been provided with little information regarding the marketing channels, the likelihood of expansion into other markets or the degree of care exercised by purchasers. Accordingly, none of these factors weighs in favor of either Plaintiff MERS or Defendants.

to describe his own product, and not at all to describe the plaintiff's product." <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1151 (9th Cir. 2002).  In contrast, nominative fair use applies where the defendant is purporting to describe the plaintiff's service.  <u>Id.</u>

To establish a "classic fair use defense," the defendant must prove that its use of the mark is 1) not as a trademark or service mark, 2) fair and in good faith and 3) only to describe its goods or services.  <u>Id.</u>  Defendants have not met the requirements of this test.  First, Defendants are using Plaintiff MERS' name as their own mark, as shown by the fact that Mr. Brosnan applied to register the name with Patent and Trademark Office.  Second, Defendants are not using the Plaintiff MERS' name in good faith. As discussed, the evidence supports Plaintiff MERS' claim that Defendants' purpose in using Plaintiff MERS' name is to confuse the public into believing that their entities are one in the same as Plaintiff MERS.  Finally, Defendants are not offering a service that they must describe as an electronic mortgage registration system, but instead are using Plaintiff MERS' name as a trade name ostensibly for real estate financing businesses.

The nominative fair use doctrine is inapplicable because Defendants are using Plaintiff MERS' name to describe their own entities, as opposed to describing Plaintiff MERS' business.

The Court concludes that Defendants are not likely to succeed on their fair use defense.

B.   Unfair Competition Law

California Business and Professions Code section 17200 makes actionable any "unlawful, unfair or fraudulent business act or

practice."  Cal. Bus. & Prof. Code § 17200.  "The violation of almost any federal, state, or local law may serve as the basis for a UCL claim."  Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).  Moreover, a business practice may be unfair or fraudulent under the UCL, even if the practice does not violate any law.  Id.

Code of Civil Procedure section 1209 provides that "acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court," including "unlawful interference with the process or proceedings of a court."  Cal. Code. Civ. Proc. § 1209(a)(8).  "Process" refers to "all writs, warrants, summons and orders of courts of justice, or judicial officers."  Cal. Gov. Code § 26660.  Defendants have interfered with the judicial process by accepting summons and other legal documents intended for Plaintiff MERS, and then refusing to forward such documents unless and until Plaintiff MERS signed a "fee agreement" to secure their return.  Notably, Defendants acknowledge they demanded fees from Plaintiff MERS to secure the return of its documents, but offer no defense or justification for their actions.  By failing to address this claim, Defendants tacitly concede its validity.  See Goldstein v. Barak Const., 164 Cal. App. 4th 845, 849 n.1 (2008).[9]

II.  Irreparable Harm, Balance of Equities and the Public Interest

Plaintiff MERS argues that irreparable harm is presumed upon a showing of a likelihood of confusion.  Previously, a plaintiff

_____

[9] Having determined that Plaintiff MERS has shown a likelihood of success as to its Lanham Act and UCL claims, the Court need not address Plaintiff's claims for conversion and trespass at this time.

in a trademark case was entitled to a presumption of irreparable harm upon showing a probable success on the merits.  See GoTo.com, Inc., 202 F.3d at 1204-05.  However, the Supreme Court's decision in Winter has effectively eliminated that presumption.  See Winter, 129 S. Ct. at 374; Volkswagen AG v. Verdier Microbus and Camper, Inc., 2009 WL 928130, at *2 (N.D. Cal. 2009); CytoSport, Inc. v. Vital Pharms., Inc., 617 F. Supp. 2d 1051, 1065 (E.D. Cal. 2009).  Nonetheless, Plaintiff MERS has proffered sufficient evidence, which is uncontroverted, to establish that it is likely to suffer irreparable harm in the absence of an injunction.

The Ninth Circuit has recognized that the potential loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief.  See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d 521, 526 (9th Cir. 1984) (finding irreparable injury where "district court could reasonably have concluded that continuing infringement would result in loss of control over Apple's reputation and loss of good will").  The loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss.  See Rent-a-Center, Inc. v. Canyon Television & Appliance, 944 F.2d 597, 603 (9th Cir. 1991).

The record supports Plaintiff MERS' claim that it has developed significant good will and established its reputation in the mortgage business over the course of the last thirteen years.

Hultman Dec. ¶¶ 9-17.  Plaintiff MERS has thousands of clients, which include some of the country's best known mortgage companies and banks, and is involved in approximately 60 million loan transactions.  Id. ¶¶ 3, 6.  Because Plaintiff MERS is listed as beneficiary on these loans, it frequently receives service of process in connection with third party lawsuits throughout the country.  Patry Dec. ¶ 11.  However, Defendants' use of Plaintiff MERS' name has resulted in legal documents intended for Plaintiff MERS being sent to Defendants by mistake.  Id. ¶ 2.  Defendants nevertheless continue to refuse to return those documents, thus potentially harming Plaintiff MERS' legal interests in those actions, as well as undermining the administration of justice.  Plaintiff MERS' potential misidentification with the entities recently created by Defendants poses a serious threat to the years of good will that Plaintiff MERS has established in the mortgage industry.

The Court is also satisfied that the balance of equities tips in favor of Plaintiff MERS.  Winter, 129 S. Ct. at 376.  The harm to Plaintiff MERS and the public resulting from Defendants' continued use of the Plaintiff MERS' name is evident from the fact that hundreds of potentially significant legal documents and notices intended for Plaintiff MERS have instead been received by Defendants.  In contrast, an injunction will not harm Defendants given that they have no right to Plaintiff MERS' documents or to use its name in the first instance.  None of the Defendants claims that they will suffer any hardship in the event the Court grants Plaintiff MERS' motion for preliminary injunction.

The public interest also favors the issuance of the proposed preliminary injunction.  The documents in the possession of Defendants that were intended for Plaintiff MERS pertain to ongoing legal proceedings in which it has been named as a party. If Plaintiff MERS does not receive the documents possessed by Defendants, it is possible that Plaintiff MERS may be in default in those lawsuits.  While Plaintiff MERS could seek to set aside a default that has been entered, that process will result in additional, unnecessary expense to the parties in those cases and burden the courts with motion practice that could have been avoided had Defendants forwarded the documents intended for Plaintiff MERS.

III. Bond

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Rule 65(c) "invests the district court 'with discretion as to the amount of security required, if any.'"  Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original; quoting Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).  A district court may forego a bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  Jorgensen, 320 F.3d at 919.

Plaintiff MERS contends, and Defendants do not dispute, that the bond amount should be either dispensed with or set at a nominal amount "because entry of [a preliminary injunction] cannot

possibly cause any harm to Defendants." Pl.'s Mot. at 21. The
Court concurs that a nominal bond is sufficient. Defendants will
suffer no harm from returning documents that are not rightfully
theirs in the first instance. With respect to Plaintiff MERS'
request that Defendants refrain from forming new entities using
Plaintiff MERS' name and change the name of their existing
entities, little, if any, damage will result in the event the
injunction is found to have been wrongful. There is no evidence
that either Messr. Brosnan or Jacobsen are operating any viable
businesses, which were formed only a few months ago, under the
Plaintiff MERS' name. Thus, the Court concludes that a nominal
bond in the amount of $1,000 is appropriate in this case.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff MERS'
motion for a preliminary injunction. Defendants and their
officers, agents, servants, employees, attorneys and all others in
active concert or participation with them ARE HEREBY RESTRAINED
AND ENJOINED, pending the resolution of this action, from:

1.   Using or applying to register MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS (with or without an "S"), MERS or any
confusingly similar designations, as a mark, business name, domain
name, email address, meta-tag or otherwise;

2.   Accepting service of process or other documents intended
for Plaintiff MERS, including summonses, complaints, subpoenas, or
any other legally-required notices naming or involving mortgage
liens held by Mortgage Electronic Registration Systems, Inc., a
Delaware corporation;

3.   Defendants shall complete the necessary documents and Secretary of State filings to change the name of companies within their control from Mortgage Electronic Registration Systems, Inc., to another name that is not identical or confusingly similar, or alternatively, to dissolve such companies, by September 8, 2009.

4.   Defendants shall immediately return to Plaintiff MERS all documents and things that any of them, or their officers, partners, agents, subcontractors, employees, subsidiaries, successors, assigns, and related companies or entities, has received that were intended for Plaintiff MERS and shall do so promptly in the future.  The above documents shall be sent directly to Plaintiff MERS' counsel, by class mail or other mutually agreeable method, addressed as follows:

> Mortgage Electronic Registration Systems, Inc.
> c/o Carla Oakley
> Morgan, Lewis & Bockius LLP
> One Market, Spear Street Tower
> San Francisco, CA  94105-1126

5.   This preliminary injunction will take effect upon Plaintiff MERS' posting a bond in the amount of $1,000.  The temporary restraining order shall remain in effect for ten days to allow Plaintiff MERS time to post the bond.

IT IS SO ORDERED.

9/4/09

Dated: _____

_____
CLAUDIA WILKEN
United States District Judge

- 22 -

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC.,

            Plaintiff,

    v.

JOHN BROSNAN et al,

            Defendant.

_____/

                                    Case Number: CV09-03600 SBA

                        **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

    That on September 4, 2009, I SERVED a true and correct copy(ies) of the attached ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

**John Brosnan**
848 North Rainbow Boulevard
#1643
Las Vegas, NV 89107

**Robert Edwin Jacobsen**
P.O. Box 1386
Lafayette, CA 94549

Dated: September 4, 2009

                            Richard W. Wieking, Clerk
                            By: Sheilah Cahill, Deputy Clerk